Brent OSTER, Plaintiff,

v.

STANDARD INSURANCE COMPANY; The Lucasfilm Ltd. Group Long Term Disability Plan; and does 1–20, inclusive, Defendants.

Case No. C–09–851 SBA (JCS).

United States District Court, N.D. California.

May 2, 2011.

Brian Henry Kim, Terrence J. Coleman, Pillsbury & Levinson, LLP, San Francisco, CA, for Plaintiff.

Chantelle Cappa Egan, Katherine Salo Ritchey, Jones Day, Shawn Hanson, Akin Gump Strauss Hauer & Feld LLP, San Francisco, CA, for Defendants.

## ORDER ADOPTING REPORT AND RECOMMENDATION RE PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS AND AMENDING JUDGMENT

SAUNDRA BROWN ARMSTRONG, District Judge.

■ Pursuant to the Court's Order of Reference (Docket 107), Magistrate Judge Joseph C. Spero issued a Report and Recommendation in which he recommends granting Plaintiff's Motion for Attorneys' Fees and Costs (Docket 100) and awarding $156,720.00 in attorneys' fees, $8,095.18 in litigation expenses, and $35,753.40 in prejudgment interest to Plaintiffs. Although no objections have been filed, this Court reviews Magistrate Judge Spero's legal conclusions de novo. *See Lorin Corp. v. Goto & Co., Ltd.,* 700 F.2d 1202, 1206 (9th Cir.1983). Upon such review, the Court finds no error in Magistrate Judge Spero's Report and Recommendation. Accordingly,

IT IS HEREBY ORDERED THAT Magistrate Judge Spero's Report and Recommendation (Docket 117) is ACCEPTED

and shall become the Order of this Court. The Judgment (Doc. # 98) in this case is hereby amended to include the previously mentioned award of attorneys' fees, litigation expenses and pre-judgment interest. This Order terminates Docket 100.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION RE PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS [Docket No. 100]

JOSEPH C. SPERO, United States Magistrate Judge.

## I. INTRODUCTION

Plaintiff Brent Oster ("Oster") brought this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, seeking reversal of the Defendant Standard Insurance Company's ("Standard") claim decision regarding Plaintiff's eligibility for disability benefits under his employer Lucasfilm Ltd.'s long term disability plan ("the Plan"). Plaintiff's claim is asserted under the Employee Retirement Income Security Act of 1974 ("ERISA"). The parties filed cross-motions for judgment as a matter of law under Federal Rule of Civil Procedure 52. The District Court entered judgment as a matter of law in favor of Plaintiff in an order filed on December 15, 2010, and judgment was entered on December 28, 2010. Subsequently, on January 5, 2011, the District Court issued its Findings of Fact and Conclusions of Law, setting for the bases for its earlier decision. Docket No. 99. On January 11, 2011, Plaintiff filed the instant motion ("the Motion"), requesting an award of attorneys' fees pursuant to 29 U.S.C. § 1132(g). Defendants oppose the motion in part. The District Court referred the matter to the undersigned for a

Report and Recommendation. *See* Docket No. 107.

The Court finds that the Motion is suitable for determination without oral argument, pursuant to Civil Local Rule 7–1(b). Accordingly, the hearing set for April 8, 2011 is VACATED. For the reasons stated below, it is recommended that the Motion be GRANTED IN PART.

## II. BACKGROUND [1]

### A. Procedural History

On January 5, 2011, the District Court issued its Findings of Fact and Conclusions of Law, granting Plaintiff's Motion for Judgment and denying Defendants' Motion pursuant to Rule 52(a)(1) of the Federal Rules of Civil Procedure. Docket No. 99. The Court held that Standard's denial of long term disability benefits had to be "viewed with [ ] high skepticism" because financial compensation of Dr. Dickerman, Dr. Toenniessen and United Review Services showed that Standard "failed to use a truly independent medical examiner or a neutral independent review." *Id.*, ¶ 68 (citing *Abatie v. Alta Health Ins. Co.*, 458 F.3d 955, 969 n. 7 (9th Cir.2006)) (*en banc*). The Court found that Standard improperly discounted the evidence that Plaintiff submitted with his appeal, demonstrating an abuse of discretion. *Id.*, ¶ 69 (citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003) and 29 C.F.R. § 2560.503–1(h)(2)(iv)). The Court also held that Standard abused its discretion by failing to find Plaintiff disabled in light of his failed employment at Radical, and by failing to consider whether he remained disabled from his own occupation, contrary to the requirements of its own claims manual procedures. *Id.*, ¶ 70–71.

---

1. For a complete recitation of the facts in this case please see the District Court's "Redacted

Findings of Fact and Conclusions of Law" filed on January 5, 2011. Docket No. 99.

The Court found that Standard had abused its discretion by ignoring the raw data in the Independent Medical Evaluation (IME) that showed Plaintiff had cognitive deficits that precluded his ability to perform his own occupation with reasonable continuity. *Id.,* ¶ 72. The Court further held that Standard failed to provide a "full and fair review" of Plaintiff's claim as required under ERISA by adding new rationales for its denial after Plaintiff's appeal over a three year period, without giving Plaintiff an opportunity to respond, and through its handling of Plaintiff's appeal. *Id.,* ¶¶ 73 (citing 29 U.S.C. § 1133(2) and *Abatie,* 458 F.3d at 974).

The Court concluded that Standard's handling of Plaintiff's claim and appeal demonstrated bias (*id.* ¶ 74) and that it had not fulfilled its duty as an ERISA fiduciary:

> In general, Standard did not comply with its obligation as an ERISA fiduciary to adhere to "higher-than-marketplace quality standards on insurers" or "discharge [its] duties" in respect to discretionary claims processing "solely in the interests" of Oster, its claimant. *See Metropolitan Life Ins. Co. v. Glenn,* [554 U.S. 105] 128 S.Ct. 2343, 2345 [171 L.Ed.2d 299] (2008) (citing 29 U.S.C. § 1104(a)(1)). Instead, its treatment of Oster as an adversary during the claims process casts doubt on the credibility of its decision on appeal.

*Id.,* ¶ 76. Judgment was entered on December 28, 2010, awarding Mr. Oster $153,973.77 in past benefits from July 7, 2004 to April 13, 2008. *See* Docket No. 98.

### B. The Plaintiff's Motion

Plaintiff argues that he is entitled to reasonable attorneys' fees and costs as the prevailing party because there are no special circumstances that would render such an award unjust. Plaintiff further argues for prejudgment interest, and for fees and costs incurred in filing the present Motion.

Defendants oppose the motion in part. Defendants agree that Plaintiff is entitled to $148,560.00 in attorneys' fees and $8,533.55 in costs. Defendants argue that Plaintiff is limited to fees and costs incurred during the present litigation, and that Plaintiff is not entitled to fees and costs incurred during the administrative proceedings that preceded the litigation here. Defendants also oppose Plaintiff's request for prejudgment interest on the ground that the prejudgment interest should have been included in the original judgment, and any request for pre-judgment interest now constitutes an untimely motion to amend the judgment and is procedurally barred. In their opposition, Defendants ask for fees and costs incurred in opposing the Motion for Attorneys' Fees on the ground that Plaintiff failed to properly meet and confer prior to filing the present Motion. Plaintiff opposes Defendants' request for these fees and costs.[2]

### III. ANALYSIS

### A. Whether the Court Should Award Fees and Costs Against Defendants Pursuant to 29 U.S.C. § 1132(g)

In the Motion, Plaintiff requests an award of attorneys' fees under ERISA's attorney fee provision, 29 U.S.C. § 1132(g), because he achieved complete success in the case and the factors set forth by the Ninth Circuit in *Hummell v. Rykoff & Co.,* 634 F.2d 446, 453 (9th Cir. 1980) support an award of fees and costs.

---

**2.** The Court finds that the meet and confer process pursuant to Local Rule 54–5(a) and this Court's Standing Order was adequate.

Defendants' request for $8,516.60 in fees and costs incurred to oppose Plaintiff's Attorneys' Fees Motion should therefore be DENIED.

The Court will first address Plaintiff' entitlement to fees and costs as a prevailing party, and then address Plaintiff's entitlement to fees applying the *Hummell* factors.

### 1. The Prevailing Party is Entitled to Attorneys' Fees Unless Special Circumstances Render Such an Award Unjust

Section 502(g)(1) of ERISA gives the court discretion to award attorney's fees. 29 U.S.C. § 1132(g)(1). The Supreme Court recently held that a fee claimant may be entitled to attorney's fees if the claimant shows " 'some degree of success on the merits' " in order to warrant attorney's fees. *Hardt v. Reliance Standard Life Ins. Co.,* — U.S. —, 130 S.Ct. 2149, 2158, 176 L.Ed.2d 998 (2010). In addition, the Ninth Circuit has held that a prevailing plan participant such as Plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Smith v. CMTA–IAM Pension Trust,* 746 F.2d 587, 589 (9th Cir.1984) (internal quotations omitted); *see also Boston Mut. Ins. v. Murphree,* 242 F.3d 899, 904 (9th Cir.2001) ("We ordinarily grant a prevailing beneficiary in an ERISA action reasonable attorneys' fees and costs, absent special circumstances cautioning against it."). As the Ninth Circuit explained, ERISA "is remedial legislation which should be liberally construed in favor of protecting participants in employee benefit plans" and, specifically, "to afford them effective access to federal courts." *Smith,* 746 F.2d at 589.

 Applying the law to the facts of this case, there are no special circumstances that would prevent Plaintiff from recovering attorney's fees. Given that Plaintiff is the prevailing party, he "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Smith,* 746 F.2d at 589.

Moreover, Defendants do not oppose Plaintiff's entitlement to fees; rather, Defendants dispute the amount to be awarded. Accordingly, for the reasons stated above, and due to Defendants' non-opposition, the Court finds that Plaintiff is entitled to attorneys' fees.

### 2. Applying the *Hummell* Factors, Plaintiff is Entitled to Fees and Costs

 Under 29 U.S.C. § 1132(g), a court in its discretion may award reasonable attorneys' fees and costs of an action by a plan participant to either party. The Ninth Circuit has held that in exercising this discretion, district courts should consider the following factors:

(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Hummell v. S.E. Rykoff & Co.,* 634 F.2d 446, 453 (9th Cir.1980). "No one of the *Hummell* factors ... is necessarily decisive, and some may not be pertinent in a given case." *Carpenters Southern California Administrative Corp. v. Russell,* 726 F.2d 1410, 1416 (9th Cir.,1984). Courts generally construe the *Hummell* factors in favor of participants in employee benefit plans. *McElwaine v. U.S. West, Inc.,* 176 F.3d 1167, 1172 (9th Cir.1999) ("When we apply the *Hummell* factors, we must keep at the forefront ERISA's purposes that 'should be liberally construed in favor of protecting participants in employee benefit plans' "). Plaintiff argues that each of

these factors supports an award of fees. The Court will address each factor below.

■ Applying the *Hummell* analysis here, the Court concludes that the factors weigh in favor of awarding Plaintiff his attorneys' fees and costs. The first *Hummell* factor supports a fee award, as the District Court made Standard's culpability clear when it stated that Standard treated Plaintiff "as an adversary" during the claims process, and violated its legal duties to Plaintiff under ERISA.[3] The second *Hummell* factor also supports entitlement to fees. The Plan was funded through the purchase of insurance from Defendant Standard. Standard's parent company, *Stancorp Financial Group, Inc.*, reported 2009 income of $315.7 million before income taxes and 2009 comprehensive income of $436.5 million.[4] As the Ninth Circuit explained in *Smith, supra:* "Based on this factor alone, absent special circumstances, a prevailing ERISA employee plaintiff should ordinarily receive attorney's fees from the defendant." *Smith,* 746 F.2d at 590. Defendants' ability to pay weighs in favor of a fee award.

■ The Court finds that the third factor—the degree to which an award will deter future conduct—also favors awarding fees to Plaintiff. ERISA does not authorize an award of compensatory or punitive damages for bad faith behavior. *See Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 147, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) (holding compensatory and punitive damages not available remedies for ERISA benefit claims). As a result, courts acknowledge that an award of attorneys' fees and costs is a way of deterring violations of ERISA. *See e.g., Caplan,* 573 F.Supp.2d at 1248 ("[A]n award of attorneys' fees could serve to deter other plan administrators from denying meritorious disability claims. This could indirectly benefit other individuals."); *see also Carpenters Southern California Admin. Corp. v. Russell,* 726 F.2d 1410, 1416 (9th Cir.1984) ("If defendant employers face the prospect of paying attorney's fees for successful plaintiffs, they will have added incentive to comply with ERISA").

Here, an award of attorney's fees and expenses will deter Standard and other insurers from terminating valid disability claims and from, as the District Court found, demonstrating bias during the claims process. *See* Docket No. 99, ¶ 74.

In addition, the fourth factor—whether relief sought to benefit other participants or resolve a significant legal question regarding ERISA—favors Plaintiff, as the outcome of this lawsuit could have a deterrent effect on Standard and other insurers'

---

**3.** Even if the District Court did not find that Standard acted in bad faith, a finding of bad faith is not required. Standard's failure to fulfill its legal duty to Plaintiff would warrant an award of fees under ERISA. *See, e.g., King v. Cigna Corp.,* 2007 WL 4365504, *2 (N.D.Cal. Dec. 13, 2007) ("[F]rom a legal perspective, Defendants are 'culpable' in that they were found to owe Plaintiff a legal duty that they were not fulfilling"); *Caplan v. CNA Financial Corp.,* 573 F.Supp.2d 1244, 1248 (N.D.Cal.2008) (same); *Smith, supra* 746 F.2d at 590. ("Although bad faith is a factor that would always justify an award, it is not required.").

**4.** *See* www.sec.gov/Archives/edgar/data/1079577/000119312510040802/d10k.htm (p. 49 of Standard 10–K report submitted to the Securities and Exchange Commission). Plaintiff requests that judicial notice be taken of Stancorp's 10–K report pursuant to Rule 201(b)(2) of the Federal Rules of Evidence. *In re Stac Elecs. Secs. Litig.,* 89 F.3d 1399, 1405 n. 4 (9th Cir.1996) (taking judicial notice of prospectus filed with SEC in context of motion to dismiss); *In re Syntex Secs. Litig.,* 95 F.3d 922, 926 (9th Cir.1996) (taking judicial notice of defendant's annual reports in context of motion to dismiss). The Court recommends that Plaintiff's Request for Judicial Notice be GRANTED.

claims handling that benefits other claimants. *Caplan,* 573 F.Supp.2d at 1248; *Smith,* 746 F.2d at 590 (noting that a decision clarifying the terms of a Plan are "helpful to the trustees in future administration, but often 'depend on a plaintiff's initiative in bringing suit.'") (citation omitted).

The Court's January 5, 2011 Findings of Fact will benefit other ERISA insureds in other disability cases where the there is a contradiction between an insurer's neuropsychologist evaluation report's conclusions and the raw data contained in the evaluation. *See* Docket No. 99, ¶ 72. The Order also provides guidance regarding an insurer's violation of its own claim manual provisions constituting an abuse of discretion. *Id.,* ¶ 71.

Finally, the fifth factor-the relative merits of the parties' positions—favors a fee award. The Court found in its Findings of Fact that Standard "did not comply with its obligation as an ERISA fiduciary" and that "its treatment of Oster as an adversary during the claims process casts doubt on the credibility of its decision on appeal." The District Court found "compelling evidence of bias" during the claims handling process. Docket No. 99, ¶¶ 76, 74. The Court concludes that the *Hummell* factors support an award of fees in this case.

### 3. The Amount of Fees to Which Plaintiff is Entitled

Having found entitlement to fees and costs, the Court turns to the appropriate amount to be awarded in this case. The amount of fees to be awarded is the heart of the parties' dispute.

■ In ERISA cases, attorneys' fees to a prevailing plaintiff are determined by a lodestar analysis, multiplying the number of hours reasonably expended on the matter by a reasonable hourly rate. *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct.

1933, 76 L.Ed.2d 40 (1983); *D'Emanuele v. Montgomery Ward & Co., Inc.,* 904 F.2d 1379, 1383 (9th Cir.1990) *overruled on other grounds by Burlington v. Dague,* 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992). The Court finds that the hours expended by Plaintiff's attorneys in this litigation were reasonable, and the requested rates are the prevailing rates in the community for ERISA attorneys with their experience and qualifications. The Court declines, however, to recommend an award of attorneys' fees and costs incurred during the administrative appeals process that preceded the present litigation.

### a. Reasonableness of the Rates Charged by Plaintiff's Counsel

■ The "reasonable hourly rate" is calculated "according to the prevailing market rates in the relevant community...." *Blum v. Stenson,* 465 U.S. 886, 896–96, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in one with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 896, n. 11, 104 S.Ct. 1541. "Affidavits of the plaintiff['s] attorney and other attorneys regarding prevailing fees in the community ... are satisfactory evidence of the prevailing market rate." *United Steelworkers of America v. Phelps Dodge Corp.,* 896 F.2d 403, 407 (9th Cir. 1990). In the absence of opposing evidence, the proposed rates are presumed reasonable. *Id.*

■ Plaintiff seeks the following hourly rates: $600 for partner Terrence J. Coleman, $400 for associates Brian H. Kim and David Lilienstein and $150 for paralegals. The Court finds that the experience,

skill, and reputation of Plaintiff's counsel support these rates. Plaintiff's counsel's firm is recognized as one of the leading plaintiff's ERISA litigation firms in the San Francisco Bay Area. Feinberg Decl., ¶ 9; Kantor Decl., ¶ 12. Plaintiff has submitted evidence that partner Terrence J. Coleman has been recognized as an "ERISA expert" by the Northern District of California and is a frequent speaker and writer on ERISA and insurance litigation issues. Coleman Decl., ¶¶ 6–7, 12, Exh. C. The evidence submitted by Plaintiff also shows that Brian H. Kim, the other lead attorney on this case, has substantial ERISA litigation experience. Kim Decl., ¶ 4. Given the rates charged by attorneys who practice in this area, the Court finds that these rates are reasonable. In connection with his Motion, Plaintiff has submitted declarations from two ERISA specialists in the San Francisco Bay Area. One specialist, Daniel Feinberg, currently charges an hourly rate of $650. Feinberg Decl., ¶ 8. Glenn Kantor, another specialist, charged an hourly rate of $550 in 2010, but states that this rate is below market for the San Francisco Bay Area. Kantor Decl., ¶ 6–7, 12. The declarations of these ERISA specialists confirm that Mr. Coleman's $600 hourly rate is consistent with the prevailing rates for ERISA litigation specialists in the San Francisco Bay Area. The specialists' declarations confirm that Mr. Coleman's rate is also consistent with the prevailing rates for ERISA litigation. The Court therefore concludes that Mr. Coleman's hourly rate is reasonable, and Defendants have not provided a basis for departing from it. *See also Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 947–48 (9th Cir.2007) (once the party seeking fees has established that the rate sought is "in line with prevailing community rates," that rate is presumed reasonable); *Langston v. North American Asset Development Corp. Group Disability Plan*, 2010 WL 1460201 at *1 (N.D.Cal., Apr. 12, 2010) (awarding hourly rate of $550 per hour in ERISA disability case and noting rates of ERISA attorneys of similar experience receiving fees between $500 and $550 per hour during 2009).

▉ Mr. Kim and Mr. Lilienstein's requested rates of $400 per hour are similarly reasonable, given the hourly rates awarded to attorneys with similar experience. *In Caplan v. CNA Financial Corp.*, 573 F.Supp.2d 1244, 1249 (N.D.Cal.2008) the court approved an hourly rate of $575 for attorney Daniel Feinberg. It also approved an hourly rate of $350 for a sixth-year associate, $330 for a fourth-year associate, and $200 for law student clerks. *Id.* In comparison, Mr. Kim and Mr. Lilienstein have each been practicing law for ten years and each have significant ERISA experience. Coleman Decl., ¶ 9; Kim Decl., ¶¶ 2–3. Moreover, the Northern District upheld the hourly rates of $500 for Mr. Coleman, and $300 for Mr. Kim in a 2009 order granting attorney's fees in an ERISA benefits case. Coleman Decl., ¶ 12, Exh. D; *Fontana v. Guardian Life Ins.*, 2009 WL 585811 (N.D.Cal., March 4, 2009).

Finally, Defendants do not rebut Plaintiff's evidence of the reasonableness of the rates sought by Plaintiff in this case. *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir.2008) ("The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the facts asserted by the prevailing party in its submitted affidavits.") (citation and alteration omitted).

Based upon the declarations submitted by Plaintiff and the absence of any contrary evidence submitted by the Defendants, the Court finds that the hourly

rates charged by Pillsbury & Levinson, LLP in this case were reasonable and consistent with the prevailing market rate.

### b. The Reasonableness of the Hours Expended During the Prosecution Of The Case

■ In *Hensley, supra,* the Supreme Court held that in determining the reasonable time expended for calculation of statutory fees to prevailing plaintiffs, courts should generally award a compensatory fee that encompasses "all hours reasonably expended on the litigation." *Hensley,* 461 U.S. at 435, 103 S.Ct. 1933. The Court stated:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally, this will encompass all hours reasonably expended on the litigation, and indeed on some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason to reducing a fee. The result is what matters.

*Id.*

■ Here, Plaintiff's counsel obtained excellent results (in that he received all of the past benefits owed to him). Standard's adversarial handling of Plaintiff's claim required an internal appeal that lasted for three years, during which time Standard "add[ed] rationales for its denial ... without providing [Plaintiff] an opportunity to respond." Docket No. 99, ¶ 73. Standard's denial of the appeal required lengthy and protracted litigation in this case, and the Defendants contested the case at every stage of the litigation.

Moreover, the District Court acknowledged that Standard treated Plaintiff "as an adversary during the claims process." Docket No. 99, ¶ 76. Given the lengthy and contested claims process and contested litigation, the Court finds that the time spent by Plaintiff's counsel in order to litigate this case to its successful completion was reasonable. Courts have acknowledged that "[p]laintiffs in ERISA matters generally must spend a great amount of time preparing for conferences and other proceedings because ERISA cases tend to be factually intensive." *Mogck v. Unum Life Ins. Co. of Amer.,* 289 F.Supp.2d 1181, 1192 (S.D.Cal.2003) (approving an award of $295,774.99 for ERISA claim when claim settled before trial). Like *Mogck,* this case was factually intensive; unlike *Mogck,* it proceeded through to Motion for Judgment. Plaintiff's ERISA specialists confirm the fact-intensive nature and the legal complexities of ERISA cases such as this one. *See* Kantor Decl., ¶ 8.

Plaintiff has submitted two exhibits along with the Coleman Declaration, A and B, which detail the fees incurred during the two phases of this case. Exhibit A shows the fees incurred during the course of the two internal appeals that Plaintiff was required to file with Standard before initiating the present litigation, and Exhibit B details the fees and costs incurred in connection with the litigation. *See* Coleman Decl., ¶ 10. Each entry shows the dates on which services were performed, the name of the attorney or paralegal performing the service, the task or series of tasks completed, and the time spent. Entries that reflected communications protected by the attorney-client privilege were redacted. These exhibits to the Coleman Declaration show the actual work performed in this case since the date of the filing of the complaint through to January

7, 2011. Together with Plaintiff's reply brief, Plaintiff filed the Supplemental Declaration of Terrence J. Coleman (Docket No. 113) and the Supplemental Declaration of Brian H. Kim (Docket No. 114), which detail time spent and costs incurred in preparing the briefing on the present Motion. Plaintiff's counsel indicates that what is not included in the billing statements are the fees that Plaintiff's counsel, "exercising billing judgment, has reduced because it felt such hours were duplicative or inefficient." Coleman Decl., ¶ 11.

■■■ Despite the fact that Plaintiff's billing records establish that the internal appeals process involved extensive hours and caused Plaintiff's counsel to incur significant costs and fees, the Court concludes that controlling Ninth Circuit law prevents Plaintiff from recovering attorneys' fees incurred in connection with the internal appeals process. As counsel for Plaintiff acknowledges, the Ninth Circuit has held that ERISA claimants are *not* entitled to attorney's fees incurred during the mandatory internal appeals process. *Cann v. Carpenters' Pension Trust Fund for Northern California*, 989 F.2d 313, 315–17 (9th Cir.1993). Plaintiff addresses this Ninth Circuit authority by arguing that "such cases were incorrectly decided." Motion at 20. Plaintiff's argument has appeal, given the facts of this particular case. However, this Court cannot ignore controlling Ninth Circuit authority that is directly on point. Accordingly, the Court declines to award Plaintiff his attorney's fees in the amount of $70,563 and costs of $10,909.00 as detailed in Exhibit A to the Coleman Declaration. Plaintiff admits that these fees and costs were incurred during the internal administrative appeals process, and under the Ninth Circuit's decision in *Cann, supra*, they are not recoverable.

Because Plaintiff was successful in this action, and because the *Hummell* factors weigh in Plaintiff's favor, Plaintiff is entitled to an award of $148,560 in attorney's fees as set forth in Exhibit B of the Coleman Declaration, plus additional fees incurred from January 10, 2010 to February 18, 2011 as set forth in the supplemental Coleman declaration. Coleman Decl., ¶¶ 10–11, Exhs. A (¶. 1–9 of fee statement showing hours billed by timekeeper and fee amounts), B (¶. 1–12, 15 of fee statement showing hours billed by timekeeper and fee amounts); Kim Decl., ¶ 7.

### c. Reasonableness of the Litigation Expenses

■■ The Ninth Circuit has concluded that a court can award reasonable litigation out-of-pocket expenses (including computer-based legal research costs) that would normally be charged to a fee paying client, as part of "reasonable attorney's fees" under ERISA section 502(g)(2)(D), 29 U.S.C. § 1132(g)(2)(D). *Trustees of the Const. Industry and Laborers Health and Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1259 (9th Cir.2006). In a recent case from the Northern District, the court awarded Plaintiff's counsel all of its claimed litigation expenses. Coleman Decl., Exh. D; *Fontana*, 2009 WL 585811 at *1.

■■ Plaintiff seeks an award of litigation expenses in the amount of $19,442.55. Coleman Decl., Exhs. A (¶. 8–9 of fee statement), B (¶. 12–15 of fee statement). Plaintiff has also submitted a supplemental billing statement, which reflects expenses incurred from January 10, 2011 through February 18, 2011. *See* Docket Nos. 113, 114. For the reasons explained above, the Court declines to recommend that the District Court award $10,909.00 in costs sought by Plaintiff in Exhibit A of the Coleman Declaration. These expenses were incurred during the administrative

appeals process and are not recoverable here. *See Cann, supra.* The Court does, however, recommend that Plaintiff's counsel be awarded the costs incurred in this litigation in an amount of $8,533.55. The Court also recommends that Plaintiff be awarded the additional costs as (as set forth in the Supplemental Declaration of Coleman), which were incurred from January 10, 2011 to February 18, 2011 in the amount of $61.63 for a total of $8,595.18.[5]

## B. Plaintiff's Request for Pre-judgment Interest

### 1. Plaintiff is Entitled to Pre-judgment Interest

 Plaintiff argues that $78,706.29 in pre-judgment interest should be included in the fee award in this case. The Court finds that pre-judgment interest is appropriate in this case and that Plaintiff is not procedurally barred from seeking pre-judgment interest.

Defendants oppose the request for pre-judgment interest, arguing that Plaintiff's request for pre-judgment interest in a post-judgment motion is improper. Relying upon Federal Rule of Civil Procedure 59(e) and *Osterneck v. Ernst & Whinney,* 489 U.S. 169, 175, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989), Defendants argue that Plaintiff is procedurally barred from seeking pre-judgment interest in a post-judgment motion. The cases cited by Defendants in support of their argument, however, do not aid their cause. Defendants rely upon *Osterneck,* for the proposition that "prejudgment interest is an element of damages and must be part of the judgment." Opp. at 2. Defendants argue that any request for prejudgment interest must be included as part of a motion pursuant to Rule 59(e), which provides that such motions are to be filed

within 28 days of entry of judgment. Because Plaintiff's motion does not cite to Rule 59(e), but cites to ERISA's Section 502, Defendants argue, it cannot properly be considered a motion to amend the judgment under Rule 59(e).

The Court is not persuaded by this argument. The Supreme Court stated: "the Court of Appeals was correct to conclude that a postjudgment motion for discretionary prejudgment interest constitutes a motion to alter or amend the judgment under Rule 59(e)." *Osterneck,* 489 U.S. 169, 109 S.Ct. 987. Defendants cite no authority for the proposition that a motion to amend a judgment to include prejudgment interest must recite FRCP 59(e) in the caption of the motion, or else it is deemed untimely and procedurally barred. For example, courts routinely construe motions for reconsideration as motions to amend or alter a judgment pursuant to Rule 59(e). *See e.g., Hill v. San Francisco Bay Area Rapid Transit Dist.,* 2006 WL 335411 (N.D.Cal., February 26, 2006) ("Plaintiff does not specify under which rule he seeks reconsideration. Since the motion was filed within ten days of final judgment, this order treats the latter motion as one to alter or amend the judgment under FRCP 59(e).")

Nor do Defendants cite authority for the notion that a motion for pre-judgment interest cannot be coupled with a motion for attorney's fees and litigation expenses. Defendants cite *McCalla v. Royal MacCabees Life Ins. Co.,* 369 F.3d 1128 (9th Cir.2004) in support of their argument that Plaintiff's motion for pre-judgment interest is procedurally barred. In *McCalla,* the Ninth Circuit found that a motion for prejudgment interest (filed three years after the judgment was entered) was un-

---

**5.** As set forth below, the Court recommends that the $500 already taxed against Defendants be deducted from this figure for a total of $8,095.18.

timely because it was filed beyond Rule 59(e)'s deadline (which, at the time, was ten days). The court explained that the motion for pre-judgment interest could not be characterized as a motion under Rule 60(b), which may be filed at any time; rather, the motion was construed as a motion under Rule 59(e) and was filed past the deadline. *McCalla* does not provide support for the proposition that a motion seeking to amend a judgment to add pre-judgment interest cannot be filed as part of a motion for attorneys' fees and costs.

Here, Plaintiff filed his motion for attorneys' fees and costs, including the present request for pre-judgment interest on January 11, 2011, which is within the 28–day time period after the December 28, 2010 judgment in which to file a motion to amend under Rule 59(e). Plaintiff points out in his reply brief that his motion was filed within the 28–day period to amend or alter a judgment under Rule 59(e). The Court finds this to be sufficient. Accordingly, the Court recommends that pre-judgment interest be awarded to Plaintiff.

### 2. The Interest Rate to be Applied

██ The parties also dispute the amount of pre-judgment interest based upon opposing views of proper interest rate to be applied. Plaintiff is correct that a district court has the discretion to award interest at a rate it deems appropriate in the particular case, based on the considerations of fairness and balancing the equities. *Blankenship v. Liberty Life Assur. Co. of Boston*, 486 F.3d 620, 628 (9th Cir. 2007). Plaintiff argues that in exercising this discretion, some courts have awarded prejudgment interest in the amount of 10% simple interest per annum, as set as set by California Insurance Code § 10111.2 when the circumstances and equities justify the rate. *See, e.g. Arnett v. Hartford Life and Acc. Ins. Co.*, 2006 WL 5781982, *5 fn. 6 (C.D.Cal. Dec. 19, 2006) (adopting the rate

of prejudgment interest under Cal. Ins. Code § 10111.2 on the grounds that Hartford denied the claimant the opportunity for a full and fair review of his claim by applying the wrong occupational standard and unreasonably concluding that the claimant could perform the essential duties of his position). Plaintiff urges this Court to do the same.

██ The Court declines Plaintiff's request to recommend that the District Court award interest at the rate of 10% simple interest per annum, as set by the California Insurance Code § 10111.2. Plaintiff argues that Standard's bad faith and culpability or "the equities of the case" merit the application of a rate of 10%, as set by California Insurance Code § 10111.2. The Court disagrees. Although Plaintiff is correct that courts frequently award interest on past-due benefits in ERISA cases, (*see, e.g., Grosz–Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1163–64 (9th Cir.2001)), the Court must follow Ninth Circuit precedent addressing this issue. The Ninth Circuit has explained that:

> Prejudgment interest is an element of compensation, not a penalty. *Although a defendant's bad faith conduct may influence whether a court awards prejudgment interest, it should not influence the rate of the interest.* Thus, we remand this case to allow the district court to choose a prejudgment interest rate that compensates [Plaintiff] for the losses he incurred as a result of UNUM's nonpayment of benefits, rather than a rate that doubles UNUM's portfolio return in order to punish it.

*Dishman v. UNUM Life Ins. Co. of America*, 269 F.3d 974, 988 (9th Cir.2001) (emphasis added) (footnote omitted).

The Court is, however persuaded by Plaintiff's alternative request—that an interest rate of 5% should be applied given

the facts and circumstances of the case. In its Findings of Fact, the District Court indicated that Standard treated Plaintiff "as an adversary" during the claims process, abandoning its roles as his fiduciary. Standard withheld payment of Plaintiff's past benefits for six years, which it has had the opportunity to invest. The Court agrees with Plaintiff that it would be inequitable to reward Standard for wrongfully terminating benefits and to earn a high rate of return investing those unpaid benefits. The U.S. Treasury Rate is currently at a low .3%. The Court concludes that it would be inequitable to award Plaintiff interest at such a low rate of interest, given the circumstances of this case. Other courts have recognized the inequity that results in cases such as this one, and declined to impose the historically low rate under 28 U.S.C. § 1961. *See e.g., Lested v. Alaris Medical Systems, Inc.,* 2010 WL 1416544 at *2 (S.D.Cal. April 8, 2010).

## IV. CONCLUSION

The Court concludes, after considering the factors set forth in *Hummell,* and based upon Defendants' non-opposition to Plaintiff's entitlement to fees and costs, that Plaintiff should be awarded his attorneys' fees and costs.

Accordingly, it is recommended that the Motion be GRANTED IN PART as follows:

1) Plaintiff should be awarded fees and costs incurred during the present litigation in the amount of $156,720.00 [6]

in attorneys' fees and $8,095.18 [7] in expenses incurred in this litigation;

2) Plaintiff should be awarded pre-judgment interest in the amount of $35,753.40, reflecting an interest rate of 5% simple interest per annum;

3) Defendants' request for attorney's fees and costs incurred in opposing the Plaintiff's fee motion should be DENIED.

IT IS SO ORDERED.

---

[6]. This figure includes the additional $8,160.00 in fees incurred from January 10, 2011 to February 18, 2011 in order to prepare the attorneys' fees motion and reply papers.

[7]. This figure reflects a deduction of $500 for costs already taxed against Defendants. *See* Docket No. 108. This figure also includes$61.63 in expenses incurred in the period from January 10, 2011 to February 18, 2011 in order to prepare the attorneys' fees motion and reply papers. *See* Coleman Supplemental Declaration, Exh. F. Although Plaintiff only sought $8,007.18 in litigation expenses, this figure appears to be a mathematical error. Plaintiff should be awarded $8,095.18 in expenses.